# Brooke *v.* Tucker.

*Bill to Dissolve Partnership and for an Accounting.*

(Decided Feb. 14, 1907.  43 So. Rep. 141.)

1. *Partnership; Contract; Communion of Profit and Loss.*—Under a contract by which one party put $100.00 in to the business to be applied to certain indebtedness, both parties were to work together for the interest of the business, and the profits to be divided one-third to each party and one-third to go to the liquidation of certain debts, such parties were partners *inter sese*, although by the same contract one was regarded as the owner of the business and was to remain in control of the business until the formation of a corporation contemplated by the contract.

2. *Same; Accounting; Dissolution; Receivers.*—The allegations of the bill that the defendant partner was insolvent, and that he had collected money due the firm which he had appropriated to his own use without making entry thereof on the partnership books, and without acquainting his partner of the facts,

are sufficient when supported by proof to warrant a decree of dissolution and the appointment of a receiver.

3. · *Same; Title to Partnership Property.*—The fact that under the contract of partnership the respondent partner has the legal title to the partnership property, is no obstacle to the appointment of a receiver, when such partner has converted profits to his own use in which complainant partner had an interest and to which such complainant partner had contribtued money.

4. *Receivers; Premature Appointment; Objections; Waiver.*—Although defendant partner submitted demurrers to the application for a receiver and filed affidavits against the appointment and thereafter appealed to the chancellor from the order of the register appointing the receiver, he waived his right to insist that the appointment was premature, because appointed by the register before answer filed, when he filed his answer before the chancellor as part of the proofs against the application, on appeal to the chancellor.

APPEAL from Crenshaw Chancery Court.

Heard before Hon. W. L. PARKS.

This was a bill praying that a reference be held to state an account between complainant and respondent so far as their connection with the business of the Crenshaw County Critic is concerned; that the register on said reference ascertain and report to the court the amount of indebtedness now due upon the mortgage made by the said Brooke to the Bank of Luverne, and also the amount due upon the mortgage made by said Brooke to B. S. Griel, T. W. Shows, J. F. Walker, J. A. Bell, Joseph F. Johnson, A. H. Hill, and A. A. Wiley; that an order be made for the sale of the property of said Crenshaw Critic subject to the mortgage thereon, and such other orders as may be necessary to dissolve and wind up the partnership between complainant and the said Brooke. The allegations of the bill are: That on the 29th day of August, 1902, complainant and respondent Brooke formed a partnership for the purpose of conducting and operating a newspaper and job office under the name of the "Crenshaw Critic," under articles of co-partnership, a copy of which is attached to the bill as an exhibit and which is as follows: "That the undersigned have associated themselves to-

7

gether for the publication of the Crenshaw County Critic, under the following terms, to-wit: (1) M. Tucker is to put into said business $100, which is to be applied to paying off the indebtedness hereinafter set forth. (2) Brooke is to be the editor and proprietor until the consummation and formation of a stock company, when stock shall be allotted in accordance with the interest of the said Tucker and Brooke; it being understood that at the time of the signing of this agreement that Brooke is the sole owner of the Crenshaw County Critic and the material and appurtenances thereto. (3) Said Tucker and Brooke shall work together faithfully and diligently for the good of said Critic, and in all things said Brooke to have control. The profits of the enterprise to be divided as follows: One-third to Tucker and one-third to Brooke, and one-third to the liquidation of the debts due to Damon & Peets, the Inland Type Foundry, and to the personal notes held against Brooke by divers persons, amounting in all to $600. (4) After these sums shall have been paid, there shall be formed an incorporated stock company in the sum of one thousand dollars, the shares to be one hundred dollars each; said Tucker to have four of the shares, and said Brooke to have six of the shares. (6) This contract is null and void if either of the parties neglect the business of the Critic from drunkenness. (6) All subscription money received shall not come under the operation of clause 3 of this contract, as regards division, until after one year from the date of the first issue of the Critic, but the money paid on subscription may be used for the current expenses of the paper. (7) No more than thirty dollars in any one month shall be drawn by said Tucker or Brooke under clause 3 of this contract (unless by mutual consent). (8) Either party of this contract may withdraw from it by giving thirty days' notice to the other and paying him what is legally and equitably due as shown by the books of this concern. (9) No money shall be drawn from the paper for the first three months, except by mutual consent." Signed in duplicate August 29, 1902. That complainant has kept the condition of said articles of agreement and partnership so far as he is concerned, but said

[Brooke v. Tucker.]

Brooke has failed to keep his part of said agreement, in that he has incumbered the plant of said Crenshaw County Critic with two mortgages. (The amounts of both and to whom given are here set out.) That neither of said mortgages have been paid, and the said Brooke used the proceeds of said mortgages for his own personal benefit, and not for the maintenance or support of said Crenshaw County Critic. That complainant had no knowledge of either of said mortgages until long after execution. And in this: That the said Brooke collected a large amount of money, to-wit, $889, which was due said paper from subscribers and other debtors of said paper, and which he has not applied to the payment of the debts of said partnership, but which he has applied to his own private use. It is averred that the profits from the paper from the date of the articles of agreement until January 1, 1905, were sufficient to pay the entire indebtedness of the business, but complainant was kept in ignorance of the real condition of the business on account of the large collections made by Brooke and which were not reported to complainant, although he was bookkeeper of said concern. It is averred that the debts of the paper are $900, that the property is worth $2.500, and the partnership owes complainant more than $900. It is averred that complainant has often requested Brooke to carry out the articles of agreement, and he has failed and refused to do so; that Brooke is insolvent, and has made more than one attempt to sell the paper, and is now attempting to sell it contrary to the wishes of complainant. It is also averred that it is necessary to keep the paper a going concern, and to let an issue or two elapse would greatly diminish the value of the property. Upon the filing of this bill, complainant filed his petition, supported by affidavit, praying for the appointment of a receiver, setting up the facts alleged in the bill, and going particularly into the conditions of the partnership, stating the solvent credits, the value of the plant, the debts due from solvent credits, the amount drawn by each partner, the proper division, and the amounts due each. Motions were made to dismiss the bill by the various parties thereto. Demurrers were interposed to the bill, raising the questions as to

whether or not the partnership existed under the terms of the contract set up. Brooke filed an aswer denying the allegations of the bill and filed affidavits opposing the appointment of a receiver. The register appointed a receiver to take charge of the business, and from this appointment appeal was taken to the chancellor, who confirmed the appointment made by the register and overruled the demurrers and the motion to dismiss. From this decree this appeal is taken.

M. W. RUSHTON, for appellant.—Under the contract set up no partnership was formed and none was to be formed. Tucker did not become liable for the debts against the outfit nor did he become liable for any losses.—*Gulf City Shingle Co. v. Boyles,* 129 Ala. 192; *Howze v. Patterson,* 53 Ala. 205. A person may be interested in or receive a part of the profits of the business without becoming a partner.—*Nelms v. McGraw,* 93 Ala. 245. The relations between these two parties was nothing more than that of tenants in common.— *Tayloc v. Bush,* 75 Ala. 132. The court erred in not dismissing the bill for want of equity.—*Hunt, et al. v. Matthews,* 132 Ala. 286; *Sabel & Sons v. Savannah R. & E. Co.,* 135 Ala. 380. The court erred in not discharging the receiver.—*Alabama Co. v. Shackleford,* 137 Ala. 224.

PEARSON & RICHARDSON, for appellee.—The contract constituted the parties partners.—1 Bates on Partnership, p. 1; *White v. Coles,* 7 Ala. 569. The appointment of a receiver was proper.—*Martin v. VanSchaick,* 4 Page 478; *Baird v. Bingham,* 54 Ala. 463. The bill was properly filed for the dissolution of the partnership.— *Harris v. Harris,* 132 Ala. 208; *Lee v. Wimberly,* 102 Ala. 539; *Moore v. Price,* 116 Ala. 247; *Law v. Ford,* 2 Paige 310; 37 Ala. 201; Storey on Partnership, section 288; 2 Bates on Partnership, section 998.

DENSON, J.—Whether complainant and Brooke are partners inter sese must be determined by their intention ,as the same is expressed in or may be gather from the written agreement entered into by them, a copy

of which is made a part of the bill.—*Pollard v. Stanton,* 7 Ala. 761; *Couch v. Woodruff,* 63 Ala. 466; *Bestor v. Barker,* 106 Ala. 240-250, 17 South. 389; 24 Am. & Eng. Ency. Law, 26.   By the contract it is made to appear that complainant and Brooke associated themselves together for the publication of a newspaper.   It also appears that at the time the contract was made Brooke was sole owner of the newspaper plant, and it may be conceded that by the terms of the contract he was to remain the owner or possessor of the legal title, and in control, until the formation of the contemplated corporation provided for by the contract; yet this of itself would not prevent the contract from being one of partnership.   To constitute a partnership it is not necessary that there should be property forming its capital jointly owned by the partners.   The property employed in the partnership business may be separate property of the partners; but if they share in the profits and losses arising from its use, a partnership exists.—*McCrary v. Slaughter,* 58 Ala. 230, 234.   According to the contract, complainant "put into the business one hundred dollars, to be applied" to the payment of certain indebtedness mentioned in the contract.   The contract stipulates that complainant and respondent shall work together faithfully and diligently for the good of the paper (Critic).   By these stipulations it appears that the complainant contributed, not only money to the capital of the enterprise, but his skill and industry besides.   The contract provides that the profits of the enterprise are to be divided one-third to complainant, one-third to Brooke, and one-third shall be applied to the liquidation of certain debts incurred by Brooke for the paper and some personal notes held against Brooke by "divers" persons, amounting in all to $600.   While nothing is said specifically about the losses, or that complainant is to share in them, yet, construing all the terms of the contract together, it is our opinion that there is created a community of profits and loss, or, as it is expressed in one of our cases, a communion of profit and loss is created.   When this is the case, it is the settled rule of law that a partnership inter sese exists.—*Scott v. Campbell,* 30 Ala. 728; *Smith's Ex'r v. Garth,* 32 Ala. 368; *Chisholm v. Cowles,* 42 Ala. 179;

*Couch v. Woodruff*, 63 Ala. 466; *McCrary v. Slaughter*, 58 Ala. 230; *Autry v. Frieze*, 59 Ala. 587; *Pulliam v. Schimpf*, 100 Ala. 362, 14 South. 488; *Lee v. Ryan*, 104 Ala. 125, 16 South. 2; 24 Am. & Eng. Ency. Law, p. 26.

It is insisted, however, that the contract only shows that the formation of a corporation at some future day was contemplated by the parties. It is true the contract provides for the formation of a corporation after the debts of the business shall have been paid; but to say that the contract does not, or that it was not the intention of the parties that it should fix their relations— their status towards each other—during their association together before the time for forming the corporation arrived, would be placing too narrow a construction on its terms. We cannot conclude that it was the intention of the parties that while working together in the business to acquire money with which to pay off the debts, their status should be undefined. Our conclusion is that the parties to the contract are partners inter sese.

The remaining question is, do the bill and affidavits support the appointment of the receiver? As is said in *Bard v. Bingham*, 54 Ala. 463-466: "The authorities affirm as a general rule that where a bill is filed seeking a dissolution of a partnership, and it satisfactorily appears that the complainant will be entitled to a decree for dissolution, a receiver will be appointed of course; the reason being that the same causes which would justify a decree for dissolution generally justify the appointment of a receiver."—*Gillett v. Higgins*, 142 Ala. 444, 38 South. 664; High on Receivers (3d Ed.) § 472. The bill avers, and we think it is supported by the proof, that Brooke is insolvent. It also avers that Brooke has collected large sums of money due the partnership, which he has appropriated to his own use, and without making any entry of them on the books of the partnership, and without acquainting complainant with the facts. This, if true, and it seems to be supported by the proof taken, constituted a breach of trust on the part of Brooke, and, taken in connection with the insolvency of Brooke, would warrant a decree for dissolution, and, therefore, the appointment of a receiver

[Brooke v. Tucker.]

should follow.—*Gillett v. Higgins, supra,* and authorities there cited.

But it is insisted that the legal title to the plant is in Brooke; that he is in possession, and for these reasons a receiver should not be appointed. Granting that the contract provides that he is the editor and proprietor, and that he is to remain in control until the corporation is formed, yet the complainant paid into the business $100, and if the respondent without complainant's consent converted to his own use profits in which complainant has an interest, and which should have been applied to the payment of the debts, it cannot be doubted that complainant under the contract has an equitable interest in the plant, and none but a court of equity can adjust such an equity; and, this being true, the fact that respondent has the legal title of itself presents no obstacle to the appointment of a receiver.—Beach on Receivers, § 619.

The respondent appeared at the hearing, and submitted demurrers to the application for a receiver and objections to the application being heard. He also submitted affidavits against the granting of the application. From the register's appointment of the receiver he appealed to the chancellor, and on the hearing before the chancellor he lodged with the chancellor his answer to the bill as a part of his proofs against the application for a receiver. So the insistence that the receiver was prematurely appointed, because appointed by the register before answer to the bill was filed, if tenable in the outset, lost its efficacy by the filing of the answer and lodging it with the chancellor, to be considered along with the affidavits submitted to him.—*Weis v. Goetter,* 72 Ala. 259.

We have found no error in the record, and the decree of the chancellor overruling the motion to dismiss the bill for want of equity and appointing the receiver are affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.